# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY BRANTLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01245-STA-egb |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Kimberley Brantley filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on June 12, 2003. On August 7, 2013, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on September 1, 1967. In her disability report, she alleged disability due to fibromyalgia, arthritis, carpal tunnel, sleep apnea, degenerative disc disease of the lower back, tailbone pain, pre-diabetes, chronic fatigue, depression, and migraines beginning April 30, 2008. She has a college degree in business administration, and she held an insurance license for

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

a short time. She worked part-time as a nanny for her treating physician, Dr. Melanie Hoppers. She last worked full-time at an auto parts store.

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through March 31, 2015; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has severe impairments of obesity, sleep apnea, insomnia, irritable bowel syndrome, tenosynovitis/carpal tunnel syndrome, anxiety, depression, and adjustment disorders; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work with postural, manipulative, and mental limitations; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with at least a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10]

---

[8] R. 53 – 63.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there are a significant number of jobs existing in the national economy that she can perform.

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

Plaintiff argues that substantial evidence does not support the ALJ's decision. She specifically argues that the ALJ erred in the credibility assessment, in weighing the medical opinion evidence, and in finding that she retains the residual functional capacity to perform work other than her past relevant work. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[15]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[16] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

---

[14] 20 C.F.R. § 404.1527(c)(2).

[15] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

[16] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

5

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[17]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[18] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[19] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[20] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[21] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[22]

In the present case, substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's physical residual functional

---

[17] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *5 (July 2, 1996).

[18] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[19] *Id.* § 404.1502, 404.1527(c)(2).

[20] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[21] 20 C.F.R. § 404.1527(c).

[22] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p, 1996 WL 374180, 61 Fed. Reg. 34,466-01 (July 2, 1996).

capacity. The ALJ properly determined that Plaintiff could perform a reduced range of light work, and Plaintiff has failed to show that she is otherwise more limited.

Plaintiff complains that the ALJ did not give controlling weight to the opinions of her treating physicians and failed to give good reasons for not doing so. Both Dr. Hoppers and Dr. Peter Gardner opined that Plaintiff could not perform even sedentary work.[23] Dr. Gardner completed a Medical Source Statement and opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently due to shoulder problems and fatigue; she could stand and walk at least two hours in an eight-hour day and could sit one to two hours in a day, due to hip tenderness; lunch and break periods would provide adequate relief; she could occasionally climb, balance, stoop, kneel, crouch, and crawl but had limited ability to reach, handle, and finger; she should avoid heights due to pain and fatigue.[24] Dr. Hoppers wrote a one-paragraph "To whom it may concern" letter in which she stated that Plaintiff had been her patient for several years and was now being treated by Dr. Gardner, and she concurred with Dr. Gardner's assessment.[25] Dr. Hoppers stated that Plaintiff would be unable to work without missing three or four days a month due to pain, depression, and excessive fatigue.

The ALJ gave little weight to the opinions of Dr. Gardner and Dr. Hoppers because they were inconsistent with their own medical findings and the overwhelming weight of the evidence. Dr. Hoppers did not identify any evidence of record to support her opinion. The ALJ may give greater weight to the "detailed narrative summary" of clinical findings than to the doctor's

---

[23] R. 1038-39, 1056.

[24] R. 1038-39.

[25] R. 1056.

conclusions.[26] Moreover, Dr. Hoppers' reliance on Plaintiff to care for her daughter suggests that she did not really believe that Plaintiff is as limited as Dr. Gardner opined. The ALJ also noted that, because Dr. Hoppers employed Plaintiff as a nanny, she might be somewhat biased.[27]

As for Dr. Gardner, as the Commissioner notes, it is not clear that his opinion should be regarded as a treating source opinion. Plaintiff began treatment with Dr. Gardner on May 6, 2013, just a month before her disability hearing, when she saw him for a routine physical examination and requested that he complete disability paperwork.[28] Thus, when he completed the form, Dr. Gardner did not have the longitudinal relationship with Plaintiff that warrants recognition as a treating relationship.

Additionally, Dr. Gardner's findings appear to be based primarily on Plaintiff's subjective reports of body aches, weakness, and pain because, upon examination, Dr. Gardner noted that Plaintiff did not appear to be in any pain.[29] "The ALJ is not required to simply accept the [opinion] of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."[30] Findings on physical examination were generally normal, other than a comment that Plaintiff had "far more than 11/18 tender/trigger points consistent with a diagnosis of Fibromyalgia."[31]

---

[26] *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013).

[27] Contrary to Plaintiff's argument, the ALJ looked at more than Dr. Hoppers' perceived bias when weighing her opinion.

[28] R. 1038-39, 1043.

[29] R. 1044-45.

[30] *Griffith v. Comm'r of Soc. Sec.*, 2014 WL 3882671 at * 8 (6th Cir. Aug. 7, 2014) (citing 20 C.F.R. § 416.927(b)).

[31] R. 1046-47.

However, a year earlier, Plaintiff saw a specialist for evaluation of fibromyalgia, and the specialist noted that all findings were within normal limits and concluded that Plaintiff's condition did not warrant a return appointment.[32] There are no contemporaneous treatment records from Dr. Gardner. Therefore, the ALJ could properly give little weight to the opinions of Dr. Gardner and Dr. Hoppers and adequately explained why she did so.

The ALJ gave significant weight to the opinion of medical consultant Susan Warner, M.D., as to Plaintiff's ability to function physically because her opinion was well-explained and consistent with the overall weight of the evidence in the record.[33] The ALJ also gave significant weight to the opinions of Rebecca Joslin, Ed.D., and Andrew Phay, Ph.D., regarding Plaintiff's ability to function mentally, as they were specific in assessing her ability to perform work-related activities and the opinions were consistent with the evidence of record as a whole.[34] The ALJ articulated appropriate reasons for giving more weight to the opinions of these reviewers than to the opinions of Dr. Gardner and Dr. Hoppers.

Next, Plaintiff complains of the ALJ's credibility assessment. A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[35] To assess credibility, the ALJ must consider the entire record, including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as

---

[32] R. 976-77.

[33] R. 967-75, 1021-22.

[34] R. 939-56, 979.

[35] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

9

well as any other relevant evidence contained in the record."[36] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying,"[37] although the ALJ's credibility finding must find support in the record.

The Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. The ALJ carefully considered the record as a whole, including Plaintiff's work history and treatment history.

In assessing Plaintiff's credibility, the ALJ pointed out that the treatment records did not support the degree of impairment alleged. For example, Plaintiff had conservative treatment during the alleged period of disability. Many of Plaintiff's doctor visits were for B12 injections, adjustments to her lap band, and acute illnesses; she frequently complained about minor issues like sinusitis, rather than her allegedly disabling impairment.[38] Modest treatment is "inconsistent with a finding of total disability."[39] Moreover, her symptoms improved significantly with medication.[40] Disability is not supported when an individual's impairments are improved with medications.[41]

---

[36] *Id.*

[37] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[38] R. 57, 531, 816, 988, 993, 1010, 1023.

[39] *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011).

[40] R. 57, 524, 976, 1026.

[41] *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014).

Although Plaintiff complained of occasional anxiety and depression, records show that her anxiety and depression were situational in nature and related to her marital problems and concerns about her teenage son's behavior.[42] Plaintiff even reported that she was happy most of the time.[43]

Plaintiff made numerous subjective complaints, but findings on physical examination were generally normal, with normal strength, reflexes, and sensation, and a normal gait.[44] An ALJ may consider the disparity between a claimant's subjective claims of disabling limitations and the relatively modest clinical findings in assessing credibility.[45]

Additionally, Plaintiff's daily activities were not consistent with her allegations of disabling impairments. Plaintiff was able to care for herself, her dogs, and her teenage son; she could cook, prepare simple meals, clean, do laundry, drive, and shop; she visited friends and family members several times a week; and she attended church, managed her own finances, took vacations, helped out at a fair, and navigated the internet.[46] During the alleged period of disability, Plaintiff walked and swam regularly, used a treadmill and bike, performed strength training and kickboxing, and worked with a personal trainer.[47] Daily activities may be considered in a credibility assessment.[48]

---

[42] R. 511, 534-36, 551, 1026, 1068.

[43] R. 501.

[44] R. 31, 37, 507, 746, 851, 865 - 903, 913, 961, 1046.

[45] *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506-07 (6th Cir. 2013).

[46] R. 80 - 83, 253 - 57, 288, 499, 802 - 08, 1073.

[47] R. 778 - 845.

[48] *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013).

The ALJ further found that Plaintiff's work activities called her credibility into question. Plaintiff alleges that she became disabled as of April 2008, yet she became an AFLAC insurance agent in May 2008, a position she held for at least one year, and, throughout the alleged period of disability, Plaintiff continued to represent herself as an AFLAC salesperson.[49] An ALJ may consider an individual's work history during a period of time in which she alleges disability.[50]

At the time of the hearing, Plaintiff worked as a nanny and had done so for several years, caring for an eight-year old child and several older children.[51] Plaintiff's ability to perform child care is an adverse credibility factor.[52] Plaintiff also worked about three days a semester as a substitute teacher.[53] Although none of this work was performed at the substantial gainful activity level, it does suggest that Plaintiff's physical and mental impairments did not preclude all employment.

The ALJ identified other inconsistencies in the record that undermined Plaintiff's credibility. Plaintiff testified that she had headaches about three times a month, but she told the consultative examiner that she had daily headaches, lasting more than four hours each.[54] Plaintiff told Dr. Woods that she was diagnosed with carpal tunnel by nerve conduction studies

---

[49] R. 245, 260, 262, 304.

[50] *See Miller v Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.").

[51] R. 245, 260, 265, 304.

[52] *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children and performing household chores.").

[53] R. 246, 260 - 63, 304.

[54] R. 88, 958.

and was advised to have surgery but was unable to afford it.[55] However there is no evidence of nerve conduction studies in the record, and Plaintiff testified at the hearing that she had excellent health insurance, fully paid by the government.[56] Plaintiff represented that she experienced chronic fatigue "all the time," yet she told a doctor that she had significant fatigue only if she had been very busy and active for several days in a row.[57] And, Plaintiff complained about anxiety, but she never sought mental health care treatment from a mental health care provider during the period in question, claiming she could not afford to do so. These inconsistencies undermine Plaintiff's credibility. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[58] The Commissioner may carry this burden by applying the grids[59] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[60] Use of the grids alone is appropriate only when the claimant can perform all or substantially all of the exertional demands of a given level. In the present case, Plaintiff can perform only a reduce level of light work. Because the ALJ could

---

[55] R. 957.

[56] R. 84.

[57] R. 275, 291.

[58] *Jones*, 336 F.3d at 474.

[59] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[60] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

look to the grids as a framework only for decisionmaking, she obtained the testimony of a vocational expert. The vocational expert responded to a hypothetical that a person with Plaintiff's age, education, work experience, and residual functional capacity could perform light, unskilled jobs as a slot tag inserter and garment sorter.[61] A vocational expert's testimony in response to a hypothetical question accurately portraying a claimant's vocational abilities and limitations, as in the present case, provides substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process.[62]

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: August 10, 2017.

---

[61] R. 98-99.

[62] *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 714 (6th Cir. 2013).